FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 DEC 19  PM 2:49

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

JFM 13 CV 3825

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| Jasmine Lamboy<br>1242 West Lombard Street, No. 3<br>Baltimore, Maryland 21223<br><br>　　　Plaintiff<br><br>v.<br><br>AG-FCP Fairways Owners, L.L.C.<br>1209 Orange Street<br>Wilmington, Delaware 19801<br>(Serve on:<br>　　The Corporation Trust Incorporated<br>　　351 West Camden Street<br>　　Baltimore, Maryland 21201)<br><br>　　　Defendant | * * * * * * * * * * | <br><br><br><br><br><br>Civil Action No.:<br><br><br>DEMAND FOR JURY TRIAL |

\* \* \* \* \* \* \*

## COMPLAINT

Jasmine Lamboy, the plaintiff, by her undersigned counsel, sues AG-FCP Fairways Owners, L.L.C., the defendant, and states:

### Jurisdiction and Venue

1. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over the plaintiff's claims arising under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12131, *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the plaintiff's claim for negligence.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b), since the defendant does business in Baltimore County which is in this judicial district, and the acts and omissions complained of also occurred in this judicial district.

## The Parties

3. The plaintiff at all times relevant hereto was a tenant under a residential lease agreement dated October 20, 2012, with the defendant, as lessor of the apartment known as 7003 Lachlan Circle, No. F, Baltimore, Maryland 21239.

## Factual Allegations

4. The plaintiff has a genetic defect in her immune response genes known as "HLA-DR genes." The plaintiff's specific HLA-DR genotype is "4-3-53" as shown by the attached genetic blood test results. (Exhibit 1.) This genetic defect causes her immune system to be unable to detect antigens such as mycotoxins (literally, fungal poisons) produced by certain species of indoor molds from unremediated, water-damaged buildings. As a result, no antibodies are formed to remove the antigens, which remain and accumulate eventually causing illness from the body's systemic inflammatory response. Therefore, because of the plaintiff's genetic defect, she must avoid exposure to indoor molds and mycotoxins from unremediated, water-damaged buildings, or else become very ill.

5. In June 2013, the plaintiff notified the defendant *via* its management company, The Donaldson Group, of the presence of visible mold in her apartment. The plaintiff requested that the defendant properly remediate the indoor molds and mycotoxins which were making her ill, but the defendant failed to do so.

6. In July 2013, the plaintiff had a certified mold inspection company, Mold Remediation and Construction Services, Inc., perform mold testing in her apartment, which test results showed the presence of several species of indoor molds known to result from water damage and which produce mycotoxins. (Exhibits 2 and 3.)

7. The plaintiff notified Baltimore County Code Enforcement, which came out and inspected the apartment and ordered the defendant to "Repair Leak & Water Stain Around Living Room & Dining Room Vents." (Exhibit 4.)

8. Despite the plaintiff's repeated requests to properly remediate her apartment including the removal of the indoor molds and mycotoxins which were making her ill, the defendant failed to do so. Therefore, on or about August 18, 2013, after notifying the landlord in advance, the plaintiff had to vacate the apartment.

9. On September 27, 2013, the plaintiff's treating physician, after extensive medical testing including the genetic blood test showing the plaintiff's genetic defect of HLA-DR 4-3-53, concluded that the plaintiff's symptoms were caused by the "direct impact from the microbial elements growing in her apartment...." (Exhibit 5.)

## Count I
## (Violation of the ADA)

10. The plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 9 above with the same force and effect as if fully set forth herein.

11. Congress when passing the ADA made specific findings including that "historically, society has tended to isolate and segregate individuals with disabilities, . . . ." 42

U.S.C. § 12101(a)(2); that "individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination," *id.* § 12101(a)(4); that "the Nation's proper goals regarding individuals with disability are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; . . ." *id.* § 12101(a)(7); and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." *Id.* § 12101(a)(8).

12. The plaintiff has a "disability" as defined by the ADA, since she has a genetically defective immune system which is a physical impairment that substantially limits one or more major life activities. *See id.* § 12102(1)(A). The ADA expressly states that "a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the <u>immune system</u>, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B) (*emphasis added*).

13. Moreover, the plaintiff's disability here as documented by her treating doctor includes the physical impairments of fatigue, joint pains, light sensitivity, blurred vision, sinus congestion, shortness of breath, temperature swings, night sweats, sleep disruption, joint swelling, increased thirst, nausea, and rash on hands and face (Ex. 5), as well as the mental impairments of vertigo, problems with memory, and headaches. (Ex. 5.) These physical and mental impairments also involve the operation of major bodily functions under the ADA such

as digestive, neurological, brain, respiratory, circulatory, and endocrine functions. *See id.* § 12102(2)(B).

14. The ADA prohibits discrimination by, among others, landlords on the basis of a person's disability: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a).

15. "Discrimination" under the ADA is defined to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." *Id.* § 12182(b)(2)(A)(ii). The defendant unlawfully discriminated against the plaintiff by, among other things, failing to make reasonable modifications in its policies, practices, or procedures when it failed to properly remediate the plaintiff's apartment to remove the indoor molds and mycotoxins, which made the plaintiff seriously ill due to her disability.

16. Making such modifications, *i.e.*, properly remediating indoor molds and mycotoxins, would not fundamentally alter the nature of the accommodations, which accommodations should not contain such toxins in the first place.

17. As a result of the defendant's acts and omissions in violation of the ADA, the plaintiff has suffered and will suffer in the future economic and non-economic damages.

WHEREFORE, the plaintiff demands judgment against the defendant as follows:

A.  a declaration that the defendant has violated the ADA by discriminating against the plaintiff;

B.  preliminary and permanent injunctions to prohibit the defendant from violating the ADA by discriminating against others with the same disability as the plaintiff's;

C.  economic and non-economic damages;

D.  reasonable attorneys' fees, expenses, and costs as provided by law; and

E.  such other and further relief as the Court determines just and proper.

## Count II
### (Negligence)

18. The plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 17 above with the same force and effect as if fully set forth herein.

19. The defendant in its capacity as property owner of the apartment owed a duty to the plaintiff as a tenant to use reasonable and ordinary care to keep the premises safe, and to protect the plaintiff from injury caused by an unreasonable risk which the plaintiff, by exercising ordinary care for the plaintiff's own safety, would not discover.

20. The defendant breached its duty by, among other things:

A.  failing to maintain the apartment to prevent interior water damage resulting in indoor molds and mycotoxins;

B.  failing to properly inspect, repair, and remediate the water damage and its resulting indoor molds and mycotoxins;

C. failing to inform and/or warn the plaintiff of the existence of indoor molds and mycotoxins; and

D. failing to properly test for the levels and types of indoor molds and mycotoxins present in the apartment as a result of the interior water damage.

21. The defendant's negligent acts and omissions proximately caused the plaintiff to suffer past and future damages including, but not limited to, permanent injuries, pain and suffering, medical expenses, loss of income, loss of personal property/contents of the apartment, all without any negligence by the plaintiff.

WHEREFORE, the plaintiff seeks judgment against the defendant for economic and non-economic compensatory damages in an amount to be determined at trial, plus costs and interest.

## DEMAND FOR JURY TRIAL

The plaintiff respectfully demands a jury trial for all issues so triable.

Respectfully submitted,

/s/_____
Neil J. Bixler
Federal Bar No. 10872
Law Office of Neil J. Bixler
9805 Mill Centre Drive, No. 446
Owings Mills, Maryland 21117
410.654.8904
nbixler@bixlerlaw.com
*Attorney for Plaintiff*